Mark Kurzman May it please the Court, Counsel. By the way, if you don't mind, I'd like to change my response or reply to nine minutes, so if you can give me the warning. I'm just five and a half now. Thank you. My name is Mark Kurzman. I was retained at 5.30 last evening while I was on a plane traveling from New York to Minnesota, and I've done my best to try to bring myself relatively up to speed. I apologize in advance for a lack of familiarity with the full record. The matter before the Court is an appeal from the Bankruptcy Appellate Panel's decision, and within that decision, the Bankruptcy Appellate Panel upheld the relating back of an amendment to allow a claim to be made against Mr. Calandrillo under 15C of the Rules of Procedure. In doing so, the bankruptcy court made an error of law, as did the bankruptcy judge. The error of law is that under Rule 15C, the amendment back can only occur if it is allowed in the statute, which initially sets the statute of limitations. That's 546A. 11 U.S.C. 546A does not, within the statute, allow for a relating back. Therefore, we believe that there was an error of law made on allowing the relating back of the amendment. I see that you're looking, Judge, for that within the brief. It is not within the brief that was filed by the- You're right. It isn't in the brief. It's not in the brief. I already knew that. I've learned a lot of things in the last 15 hours. The brief was mostly about contemporaneous exchange. It was about contemporaneous exchange. It was about whether or not there was new value, and so I'll now address those issues. With regard to the contemporaneous exchange, the bankruptcy appellate panel used the Webster's Dictionary definition of contemporaneous. That's an interesting way to address it, but it doesn't comply with the law. It was a substantially contemporaneous exchange, and it was done outside of the 90-day period. The payment to complete the exchange was made within the 90 days. However, in looking at what the intent of the parties were, the bankruptcy court and the bankruptcy appellate panel looked only at the settlement agreement and said, well, since it called for basically three steps, we're going to say it's not a contemporaneous event. But that is, with all due respect, erroneous thinking because, first of all, it would be absurd to think that at the time the settlement agreement is reached, which is outside the 90 days, that Genmar would have written a check before Genmar gets either the boat and or the lien waivers removed so Genmar can take clear title. And, therefore, they required that there be an execution of further documents to allow for the clear title to go to Genmar. Is this argument that there's no preference so we don't get to 547C? I mean, it's new, so I'm having trouble trying to pick up on it. I understand. Yes, that is my argument, that the steps relate back to the agreement and the agreement is entered outside the 90-day period. What the bankruptcy court and the appellate panel did is they looked at this and said, well, the terms of the settlement agreement provide that a check shall not be paid any sooner than 15 days after the title clearances get back to Genmar. In looking, I couldn't find a case. Admittedly, I didn't have a whole lot of time, but I spent a fair amount of it looking for a case that might be kind of on all threes instead of all fours. I couldn't find anything that really relates to this kind of a situation where the Genmar gets the boat. In footnote two of the brief of the trustee, they indicate that the boat was resold for $115,000. So this is not a situation where there is a depletion of the resources of the debtor. The debtor got the boat. The boat was the new value. As a result of getting the new value, the debtor did not diminish its estate and, therefore, it does not unfairly impact the other creditors that are in the same stance. It paid $205,000. The amount paid to settle the claim was clearly greater than the value of the defective boat, which was taken in exchange for obvious reasons. I can't find case law linking whether the new value has to be equal or greater. I couldn't either. I saw some hint that maybe it doesn't have to be equal and that, in fact, the amount of the preference will be limited by the new value, but the rest would be equal. There's no question in my mind that this was not a typical new value exchange. Nor was the transaction intended to help a floundering debtor survive. No, it was not done for that purpose, but if you buy a car, you may spend $50,000 for it, and when you drive out of the driveway and make your first left turn, it very well could have lost 25 to 30 percent of its value. So what was not addressed and what was not looked at is that there was new value that was given. I think it remains open as to what that was, which is part of why we're asking. Well, the BAP didn't decide the case based on new value, as I understand it, right? It decided it just based on intent to make a contemporaneous exchange. Right. That was the linchpin of the argument. So what's your view on that? The BAP says there was this timing delay, and therefore it was not intended to be contemporaneous. What do you say about that? And related to that, what do you make of the fact that the statute refers to intent to make a contemporaneous exchange and then says that it also must be, in fact, substantially contemporaneous? Does that mean there's a difference between what's required in the intent and what's required in the actual exchange? That's how I would read that, is that the intent is one issue and then the contemporaneous or substantially contemporaneous is another prong that has to be looked at. All right. So what's wrong with the BAP saying it wasn't intended to be contemporaneous because of the lag time for payment? Because they went to the dictionary definition and said it has to be at the same time. What do you think it means? Excuse me? What do you think contemporaneous means? I think if it's substantially contemporaneous— Well, why would the statute then not have the word substantially in the first prong? Well, 547C1— C1A doesn't have the word substantially. C1B does. Correct. Right. And you just said C1A is satisfied as long as the intent is to be substantially contemporaneous. Oh, no. I'm sorry. I didn't mean to say that. What did you mean? What I meant to say is that there's two issues to look at. The first is what was the intent, and then the second is— Right. The BAP says it was not intended to be contemporaneous because it was intended to have a built-in lag time for payment. What's wrong with that? What's wrong with that is that it is a finding of fact without any evidence in the record to support it. And the depositions that were taken that were provided to the court for summary judgment, there was testimony from Mr. Calendrillo that indicated that this was intended to be all part of one transaction. And so— So if it's all part of one transaction, you say it's a contemporaneous exchange even if it's not all done on one day. Correct. Yeah. So that's your position, and you say there's a fact issue. The BAP, of course, can't really find facts. It shouldn't find facts. The district, I mean the bankruptcy court, did you look at the bankruptcy court's order on this? I didn't get that. Yeah. There's not much of a finding as I read it. It just says the payment required no sooner than 15 days after delivery of clear title was not a contemporaneous exchange. No finding about intent. And that's— My problem, I think all part of one transaction is too broad. It seems to me that the problem I have with this one is that the BAP's approach and clearly the trustee's argument on appeal would mean that a transaction in which a purchase and sale of an asset for which there is a secured creditor or claimants for which a lien waiver must be obtained could never be contemporaneous if the lien waiver has to be obtained before the deal is completed. That seems to me to be pretty darn harsh. Harsh to my client? Because I agree that it would be harsh to my client if it was viewed that way. I don't understand how the need to get a lien waiver, which is a not uncommon situation. You know, it could be a home, but here it's a boat. Lien waivers are in the offing. It's not surprising that the debtor, before it gets—wants the boat back with good title, the only way to do that is to pay part of the money so the liens are paid off. Then you get the waiver. Then you pay the balance. It's not just all part of one transaction. It's one contemporaneous transaction separated by the kind of time that the seven-day stock exchange cases have upheld. If I may, I'm down to a little under three minutes, and I'd like to learn more about the case from the trustee's argument so I can try to make some reply. In your limited time, did you have a chance to look at a case, Dorholt 224 F. Thurden's case from this circuit where we explained substantial contemporaneous, and it's a case-by-case— Well, it is case-by-case and heavily factually. Right. Which seems to support the idea that the dictionary definition was improperly applied, but that a factual situation exists here. Well, I agree. The law does require a detailed factual analysis, which isn't present. It needs to be sent back so that can be determined. Thank you very much. Thank you. May it please the Court. Excuse me. I'm Jennifer Lurken on behalf of Michael Dietz, the Chapter 7 Bankruptcy Trustee of Genmar Holdings. Genmar Holdings filed bankruptcy on June 1st of 2009. Within 90 days prior to filing bankruptcy, Genmar Holdings— So a reference to Genmar Holdings and 21 Affiliates. Correct. So why do we have the bankruptcy court and the BAP and you in your brief carefully distinguishing who the debtor is? If it was—why isn't—I assumed, maybe wrongly, Genmar, Tennessee was one of the 21 affiliates. That's correct. So why is this identity of debtor even an issue at all? To some extent, actually, the trustee doesn't separate them and didn't separate them in the bankruptcy court. It was— The BAP sure did. It was distinguished in the BAP. And we don't think that that distinguishment is actually relevant to this actual decision. The BAP thought—and if this Court agrees as well, that's fine— but in this case, the settlement agreement was signed by Genmar, Tennessee. Genmar Holdings paid the $65,000 transfer at issue. So they're two different entities. So the BAP determined that you could not determine Genmar Holdings' intent from the settlement agreement because they weren't an actual party. Appellant has said, well, they were a party because it says Genmar, Tennessee and its parent. And we do not deny Genmar Holdings was the parent of Genmar, Tennessee. But that means that the BAP's intent analysis is just nonsense. Well, I think the BAP went one step further. If the debtor should be viewed as both, then the fact that one affiliate signed the document and another affiliate paid the money and a third affiliate took possession of the boat shouldn't make any difference in terms of parsing out the intent. Well, I think it made the difference because in the BAP, the BAP said, well, the settlement agreement doesn't seem to say what Genmar Holdings' intent was. And that's the only evidence the BAP had because that's the only evidence that the appellant provided to the bankruptcy court of any intent of Genmar Holdings. So they're asking— You just admitted that the debtor is one of your 22 entities. No, the debtor in this case, they're affiliates. But to be honest— Are they all part of the same proceeding? No, they are separate. Are they all in the same district? Yes, but they are not substantially or procedurally consolidated. The appellant incorrectly listed them, I would say. They are handled as 23 different separate bankruptcy estates. So what was your point about the only evidence that Calendrio submitted of Genmar's intent was what? The only evidence they submitted of Genmar's intent, and whether it's Genmar Trust Tennessee or Genmar Holdings, is the settlement agreement. There is no other evidence. And the law says that it's both of their intent. So you've got evidence of what Calendrillo's intent is, but the only evidence we have of Genmar's intent is the settlement agreement. And so in our opinion, the BAP went a step further and said, regardless of whether—even assuming it shows Genmar Holdings' intent, the intent shows that they specifically carved out and said that the transfer will not be made until 15 days after they receive the lien documents. Let's keep them all separate just the way the BAP did. Now, what was the antecedent debt? Well, actually, Your Honor, we would argue there was no disagreement in the underlying court. In what? The underlying debt. Genmar Holdings had nothing to do with this transaction. All it did was gratuitously pay a bill for Genmar Tennessee. Tell me what the antecedent debt was. Well, the settlement agreement says that the parent of Genmar Tennessee is liable under the contract. The settlement agreement does say parent. And so my understanding is if the parent is part of the contract, that is the underlying debt. So if they have a— What underlying debt? Of the contract, the settlement agreement. They have a contractual agreement to buy back the boat. That's the underlying debt. But there has to be an antecedent debt for there to be avoidable preference. What's the antecedent debt? If it's all—if it all arose—if Genmar Holdings' only relationship to this boat deal over one of the 21 other debtors is to participate in the settlement agreement, where is the 547B antecedent debt? The settlement—I guess my argument is the settlement agreement agreeing to pay the $205,000 is the antecedent debt. It was signed in February. I believe February 19th. But the payment underneath that debt was not paid until March 23rd. That's the antecedent debt. It's similar to getting product from a company, and you get the product delivered, and the antecedent debt is that you owe the invoice. Why can't that be contemporaneous or substantially contemporaneous if the payment is separated by a couple weeks, 15 days? Because there's an intent. And in this, the settlement agreement specifically says there's no intent. They couldn't, according to the settlement agreement, pay it the next day. Right, but— No sooner than 15 days. So their intent was it's not going to be contemporaneous. There has to be this time period, this 15 days between receiving those lien documents and payment. What do you think contemporaneous means then, same day? Contemporaneous, no. I would say contemporaneous does—well, contemporaneous, yes, at the same time. Substantially contemporaneous, I think the case law has said that that can have some lag time. But I would distinguish this from, like, as Logan indicated, a secured creditor agreement. Because at the time that they—when you have a secured creditor agreement, at the time of the exchange, a security interest is given. It's just not perfected until later. In this situation, nothing was given. The money wasn't given until it had to be 15 days later. So there's this separation. It wasn't separated. It was at Llewellyn where there was the cash account and the collateral account, and there was a stock deal. Yes. There was no relationship at the time of the debt. They pulled in the collateral later. Correct. And I would say it's similar to this case in the fact that the $65,000 payment— And the 540C1 was applied. But I think the thought is it was going to be pledged at the time. In Llewellyn, my understanding is— It's not the facts that I just read last night in the library. Maybe I have the wrong case, Your Honor. My understanding is there was always the understanding that in Llewellyn they would be paying that into the— I'm sorry. I may have the case name. I didn't write down everything. It was the case where the party with the margin account pulled stock out of the cash account and suddenly was short a few days later. Correct. So they ran and put that stock back in. Yep. And the agreement— Uncontemplated at the time of the margin purchase. I would distinguish Llewellyn because the agreement in Llewellyn called for payment within 7 days. This agreement said no sooner than 15 days. So that's the distinguishment. In there it said you have to do it within 7 days. And here they said you can't do it within 15 days. And that's how I would distinguish that case. What was the reason for that? Do we know? The 15 days we don't know. Unfortunately, when you're a bankruptcy trustee and getting access to the person who actually wrote the agreement, it's difficult, and it wasn't anything that was discovered by Calendrillo that they went into. A number of issues I wanted to touch on. First of all, the claim that there's no preference here and the fact that the BAP didn't address that. How much of the 15 days turned up getting the lien waiver? It was 15 days after the lien waiver. So the agreement says we received the lien waiver 15 days after, no sooner than 15 days after we received the lien waiver. We'll send it out. So there wasn't lag time waiting in those 15 days for the lien waiver. It's we get the lien waiver, we're waiting 15 days, and then we'll send it out. There's no agreement we're going to send it out the day we receive the lien waiver. In fact, the agreement was that they couldn't send it out the day they received the lien waiver. There was some discussion by opposing counsel about the relation back in the amended complaint, and that was not preserved on appeal, and so I would argue that that shouldn't be at issue here. I also want to point out that the only evidence of intent here was the settlement agreement, and it's the burden on Mr. Calendrillo, not the trustee, because this is his defense. So it's his burden to bring evidence before the bankruptcy court to show this defense, and he did not meet that burden. Would that be a factual finding by the bankruptcy court? We do believe that the intent issue is a factual finding. That's discussed in the Gateway Pacific case, 153 Federal 3rd at 918, specifically states that an intent ruling under this specific statute is a ruling of fact, and the underlying factual ruling was, in this case, the underlying factual ruling was that there was a lack of intent for the exchange to be contemporaneous. There was a finding, and you say that should be reviewed for clear error? Yes, that's our position. And you say that finding was made by the bankruptcy court? That's correct. What are you relying on there? Because I have this order granting and denying summary judgment, which is at appendix 48, page 51, and that says the payment required no sooner than 15 days after delivery was not a contemporaneous exchange. Is that what you're relying on? That's what I'm relying on, yes, Your Honor. We believe that's a finding of fact in a summary judgment order. Is it different in bankruptcy for some reason? It's less formal in bankruptcy, I would say, Your Honor. There are no actual specific list of this is a fact, this is a fact, fact one, fact two, fact three. You have to take the facts as undisputed in a summary judgment proceeding. Correct. So I'm not sure why you say there's a finding. Well, I guess then you say it's not a finding of fact, but he determined it's the only fact that was supported. You're saying that there's no reading of the facts that would support a finding of intent to make a contemporaneous exchange. But that's your position. But if we don't agree with that and we think it's a factual question that has to be resolved, then it would go back. Correct. But the issue is in what the judge in this case basically said is this is the only evidence that Calendrillo pointed to was the settlement agreement. And he looked at this settlement agreement and determined because it said the 15 days, that's the factual finding. There's no argument. The facts are undisputed because the settlement agreement is what the settlement agreement is. He determined then that there's this intent and that's what the intent in the settlement agreement was that it would be no sooner than 15 days. And he based on that found under the law that it was not, that Genmar did not intend for the exchange to be contemporaneous. So the $140,000 was also avoidable preference? Well, that gets to, you were asking a question about the new value and whether there was new value and how new value works in bankruptcy. In this situation, we would argue that there was new value. That was the position the trustee took. So the first payment was made pursuant to this step-by-step process in the settlement agreement. The first payment was made. Then new value of the liens were transferred in. And we would argue that that was new value for the first payment. But then the $65,000 was paid and there was no new value after that. And so- You disregard the value of the boat? You just say the liens were worth $140,000, then the boat, value of the boat was greater than the 65? Well, I should say the return of the lien cards and the information, so the return of the boat. The returning of the lien waiver confirming the bank's discharge of the lien. That value of that waiver of the lien. But the liens were claims against Calendrio. Yeah, I apologize. I misspoke. You're right. Calendrio had a tort or contract claim against Gen 10, Gen Tennessee. Correct. I'm having trouble seeing how you're parsing through this new value. What does- All you're saying is 205 was avoidable preference, and now you can't avoid going back to the underlying sale of the defective boat, as to which Gen Holdings had no involvement at all, so the BAP ruled. Where is the new value? Take me through the new value. We've got a $205,000 going. We've got $140,000 and $65,000 going out. You're conceding there's new value. Tell me what it was and what it was worth. Well, the thing is we didn't get into this, but our position would have been, because this wasn't an issue under the bankruptcy court hearing. This didn't come up, because in bankruptcy, the appellant had actually admitted that this was a preference. That was determined. I believe it is in the order that it was not contested. It was admitted that it was a preference. It was never in any of the briefs. But the way the trustee handled it is, number one, the trustee looked 90 days back and saw this preference, sued this lawsuit out, later then found out it was pursuant to this settlement agreement, looked at that payment, the original payment to the bank of $145,000, looked at that, and that was outside the preference period, the 90-day preference period. $140,000? Correct. It's outside the 90-day preference period. So, number one, we didn't feel like we could go after it. Number two, the trustee looked at it and said, even if it was within the 90-day preference period, they gave the lien waivers and the certificate of title, assigning the vote back to the company. So we didn't put a value dollar amount on that, but we determined, well, that was new value for that $140,000 transfer because it came after. New value has to come after. You can't give new value before you give the transfer. So then they gave the certificate, title certificates, back to the company. Then, after that occurred, 15 days later, no sooner than 15 days later after that occurred, then the $65,000 payment was made. In this transaction, surrender of the lien, which was paid off, was, in essence, new value. Is that right? We're arguing it was not because it did not come after. We're not talking C-4. We're not talking subsequent new value. We're talking contemporaneous new value. Yes, and we're saying it's not contemporaneous. What are you talking about after? The $65,000 transfer was after any potential new value was given. You can't give new value before you make a transfer because it wouldn't be new value for that transfer. I read cases last night where that's true, where the timing is such if it's an international transaction. There was one case, one of our cases, in fact, where there was a series of payments and some of them came before and some after with the delivery of the product from Canada. Well, in this case, in this settlement agreement, I would say that's not the situation. It clearly indicates that the payment cannot be made until 15 days after what they're alleging is the new value. So how can you say it's new value or even at the same time if it cannot be exchanged 15 days until 15 days later? Well, some of this was what can't be exchanged until 15 days later, the surrendering of the lien on the boat? So the lien was surrendered 15 days earlier, and they said, okay, surrender that, and we're going to wait 15 days. We're not going to give you your money for 15 days. So when they say that, the intent of the company was it's not going to be exchanged at the same time. It's not contemporaneous. It's exchanged 15 days later. So Mr. Condrillo was at the mercy of the deal that was put forward. This boat was actually sold for about $300,000, wasn't it? And after they had the arbitration and it was taken back for well less than what they paid for, does that make any difference in this equation here that we're dealing with? I don't believe it was sold for well over $300,000. When it was purchased new, it was purchased for more than the $208,000 that was involved here, I believe, as I read the record. So you've got the defendant here having some money paid to this boat company. I don't think it was more than the $208,000 that's bouncing around in this transaction. My understanding is they paid him for the full amount of what he purchased the boat for. Well, I don't know. It was like $280,000 or $300,000. Yeah, I think so. So there's about $80,000 that were in the debtor's till that the— It was a settlement. Yeah, your client has taken care of. It's ignored. Well, I wouldn't agree that it's in the debtor's till. The debtor's the boat manufacturer. Another company sold the boat and could have taken profit as well. Within this family of boat people, there's some money here. I suppose the sailor got a part. But he didn't get—you didn't— The $208,000 didn't reflect what he paid for the boat by any means. It's our position that it did. It's our position that it did. I think your conversation is incorrect. I see I'm out of time. If I have no further questions, thank you. Thank you. Mr. Kershman? Thank you. My recollection is, in reading through materials, that the original purchase price for the boat was $285,000. But if the court would allow me to supplement. It's somewhere in the briefs. Yeah, it's in the records. All right. Thank you. One other issue that I wanted to address was that under 547B, the new party either knew or should have known that the adversary proceeding had begun. And there was an assumption made there that Mr. Calendrillo did know that because the law firm that had been— that initially the adversary proceeding was taken against had taken steps to get themselves out. That conclusion is without any basis of fact in the record anywhere. Mr. Calendrillo could not have known or even had reason to know under 547B that the adversary proceeding could be coming to him. So he's relying on basically—I mean, he has a statute of limitation. He has—the statute of limitation has run. And then he finds out that the trustee is moving to amend. Well, that all occurs after the amendment is filed. And therefore, we believe that that is another reason why this matter should be remanded back. To the extent that counsel has argued that the appellant admitted it was a preference, I think that is a slight misreading of the information in the file, at least to the extent that I was able to learn it. The appellant did not contest whether it was a preference or not, which is different than agreeing that it was a preference. That's my understanding of the record. And therefore, with all due respect, and I would appreciate the time you gave me, we would request that this be reversed, sent back down for evidentiary determinations and other proceedings consistent with the appellant's position. Thank you. Thank you, counsel. The case has been well presented. I find these 547 cases consistently confusing and difficult, and I always have to work hard, but oral argument has helped, and we will take it under advisement.